STEPHEN CHA-KIM* (NY - 4979357)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.8000
Email:  stephen.cha-kim@arnoldporter.com

CARSON ANDERSON (CA - 317308)
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA  94306-3807
Telephone: 650.319.4500
Email:  carson.anderson@arnoldporter.com

NATALIE STEIERT* (DC - 90010655)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington,  DC 20001-3743
Telephone: 202.942.5000
Email:  natalie.steiert@arnoldporter.com

OREN NIMNI* (MA - 691821)
AMARIS MONTES* (MD - 2112150205)
RIGHTS BEHIND BARS
416 Florida Avenue N.W. #26152
Washington, D.C.  20001-0506
Telephone:  (202) 455-4399
Email:  oren@rightsbehindbars.org
          amaris@rightsbehindbars.org

SUSAN M. BEATY (CA - 324048)
CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California  94612-4700
Telephone:  (510) 679-3674
Email: susan@ccijustice.org

MARK RAFTREY (CA - 352610)
BROOKE D'AMORE BRADLEY (CA -
353030)
ARNOLD & PORTER KAYE SCHOLER
LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415-471-3361
Email:  mark.raftrey@arnoldporter.com
brooke.damorebradley@arnoldporter.com

*Pro hac vice pending

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

F.S.,

    Plaintiff,

v.

UNITED STATES OF AMERICA; UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; RAY J. GARCIA; PATRICK POOL; and SERGIO SAUCEDO,

    Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................1

JURISDICTION AND VENUE ..........................................................................................2

THE PARTIES .....................................................................................................................3

CONDITIONS PRECEDENT TO FEDERAL TORT CLAIMS ACT CLAIMS ...........5

JURY DEMAND .................................................................................................................6

FACTUAL ALLEGATIONS .............................................................................................6

I.  Federal Law Requires BOP to Take Action to Prevent and Appropriately Respond to Reports of Staff Sexual Misconduct .................................................................6

II.  FCI Dublin Leadership and Staff Allowed Sexual Assault to Flourish. ................8

III.  Defendants POOL And SAUCEDO, And Officer RAMOS Terrorized Plaintiff And Forced Her To Have Sex With Defendant POOL .........................................10

IV.  Defendant SAUCEDO Sexually Harassed And Threatened Plaintiff ................13

V.  Plaintiff Was Repeatedly Subjected To Discrimination Because Of Her Identity As A Native American .................................................................................................13

VI.  Defendants POOL And SAUCEDO, And Officer RAMOS Threatened Retaliation And Coerced Plaintiff Not To Report Her Abuse .....................................................14

CLAIMS FOR RELIEF ....................................................................................................15

PRAYER FOR RELIEF ....................................................................................................31

Plaintiff F.S. ("Plaintiff"), by and through her attorneys allege against the Defendants as above captioned as follows upon information and belief:

**INTRODUCTION**

1.      For years, people incarcerated at the Federal Correctional Institute, Dublin ("FCI Dublin"), a federal female low-security prison with an adjacent satellite camp, have been subjected to rampant, horrific, and ongoing sexual abuse that continues to this day, including but not limited to: rape and sexual assault; manipulation and sexual coercion, including officers entering into relationships with incarcerated individuals and officers forcing incarcerated individuals to undress in order to be released from cells or for exchange of goods; degrading sexual comments; voyeurism; taking and sharing explicit photos; drugging, groping, and other forms of abuse during medical exams; and targeted abuse towards immigrants under threat of deportation.  The Federal Bureau of Prisons ("BOP") and employees at every level have been aware of these problems for decades and have failed, and continue to fail to take action to protect those in its care by preventing and addressing rampant staff sexual misconduct.

2.      The staff sexual abuse at FCI Dublin became the center of a sprawling criminal investigation, multiple Congressional inquiries, and national media attention.  The United States Senate's Permanent Subcommittee on Investigations devoted multiple hearings to addressing its causes and impact, and issued a report in December 2022 describing the abuse as "horrific" and Defendant BOP's investigative practices as "seriously flawed," and concluding that "BOP management failures enabled continued sexual abuse of female prisoners by BOP's own employees."[1]

3.      Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to incarcerated people.  Under PREA, the U.S. Department of Justice promulgated

---

[1] S. PERMANENT SUBCOMM. ON INVESTIGATIONS, REP. ON SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS, 1 (Dec. 13, 2022), https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf (hereinafter "Senate Report").

COMPLAINT

1  detailed mandatory regulations that provide precise procedures that prisons must follow.  The

2  Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

3       4.    Despite these mandatory protections, while incarcerated at FCI Dublin from 2017

4  to 2019, Plaintiff, was subjected to repeated sexual abuse by many officers at FCI Dublin.  At least

5  twice a week for months, Defendant POOL forcibly raped Plaintiff while Defendants SAUCEDO

6  and RAMOS held her down.  Defendant SAUCEDO also sexually harassed and threatened

7  Plaintiff.  Defendant SAUCEDO and Officer RAMOS knew about Defendant POOL's sexual

8  abuse and actively promoted it by repeatedly searching and destroying Plaintiff's room to coerce

9  her to comply with Defendant POOL's advances.  They also conspired to perpetuate the systemic

10  abuse and harassment by other officers by creating a payment system to encourage other

11  incarcerated people to act as lookouts and acted as lookouts themselves.  All three of Defendant

12  POOL, Officer RAMOS, and Defendant SAUCEDO threatened Plaintiff with retaliation to

13  prevent her from reporting the abuse and misled her as to the viability of her claims.  In doing so,

14  Defendants violated Plaintiff's Constitutional rights and California law on gender violence, sexual

15  assault, and common law on battery.

16       5.    As a result of Defendants' actions, Plaintiff suffered numerous emotional injuries

17  and incurred severe personal injuries, which continue to affect her today.

18       6.    Plaintiff brings this suit under the United States Constitution Eighth Amendment's

19  prohibition on cruel and unusual punishment.  Plaintiff also brings this suit under the Federal Tort

20  Claims Act ("FTCA") 28 U.S.C. §§ 2671, *et seq.*, under state law on gender violence and sexual

21  assault, and in connection with the deficient supervision and custodial care provided by various

22  BOP personnel, including Defendant GARCIA, Defendant POOL, Officer RAMOS, and

23  Defendant SAUCEDO, within the scope of their employment within the BOP.  Plaintiff also

24  brings this suit under the Trafficking Victims Protection Act ("TVPA") 22 U.S.C. §§ 7101, *et seq.*

25  **JURISDICTION AND VENUE**

26       7.    This Court has original subject matter jurisdiction in this action involving claims

27  arising under the United States Constitution pursuant to 28 U.S.C. §§ 1331 and 1346(b).

28  Plaintiffs' claims are predicated, in part, upon the FTCA, 28 U.S.C. §§ 2671, *et seq.*, authorizing

COMPLAINT

1   actions seeking relief against the United States.

2        8.      The Court has personal jurisdiction of the Defendants because the alleged incidents

3   occurred within the confines of the State of California.

4        9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1402(b) as

5   a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the

6   boundaries of this District, in the County of Alameda.

7                                   **THE PARTIES**

8        10.     At all times relevant hereto, Plaintiff was incarcerated in the custody of BOP,

9   incarcerated at FCI Dublin located at 5701 8th St., Dublin, CA 94568.  In February 2019, Plaintiff

10  was transferred to FCI Phoenix and Plaintiff was transferred to FCI Pekin in May 2023.

11       11.     Defendant United States of America (hereinafter "United States") is the appropriate

12  defendant for Plaintiffs' claims under the Federal Tort Claims Act.  The United States is a

13  sovereign entity that has waived its immunity for certain claims, including the claims set forth

14  herein, and is liable for the acts or omissions of its agents, servants, contractors, and employees

15  that occur within the scope of their employment.

16       12.     At all times relevant hereto, Defendant United States, acting through the BOP, was

17  responsible for the operation, control, supervision, policy, practice, implementation, and conduct

18  of all BOP matters including at FCI Dublin and was responsible for the hiring, retention, training,

19  supervision, management, discipline, and conduct of all BOP personnel, including but not limited

20  to Defendants GARCIA, POOL and SAUCEDO, and Officer RAMOS .

21       13.     In addition, at all relevant times, United States was responsible for enforcing the

22  rules of the BOP, and for ensuring that BOP personnel obey the Constitution and laws of the

23  United States.

24       14.     Defendant PATRICK POOL ("Defendant POOL") was an officer at FCI Dublin

25  during the time period relevant to the events described herein and is sued in his individual

26  capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint,

27  Defendant POOL was acting within the scope of his official employment, or with the BOP's

28  permission and consent and under color of federal law.

COMPLAINT

15.     Officer NICHOLAS T. RAMOS ("Officer RAMOS")[2] was an officer at FCI Dublin during the time period relevant to the events described herein.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer RAMOS was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

16.     Defendant SERGIO SAUCEDO ("Defendant SAUCEDO") was an officer at FCI Dublin during the time period relevant to the events described herein and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Defendant SAUCEDO was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

17.     At all times relevant hereto, Defendant United States, acting through the BOP, hired Defendants GARCIA, POOL and SAUCEDO, and Officer RAMOS  to serve as "correctional officers" and "law enforcement officers" within the meaning and powers of 28 U.S.C. § 2680(h).

18.     Defendant RAY J. GARCIA ("Defendant GARCIA") was the associate warden at FCI Dublin between December 2018 and November 2020, and the warden of FCI Dublin from November 2020 to July 2021 – a time that overlapped with Plaintiff being abused by Defendants POOL and SAUCEDO, and Officer RAMOS.  As the warden, Defendant GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin.  Defendant GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.  In his capacity as an agent, servant, and employee of Defendant United States, and within the course and scope of his employment as such, Defendant GARCIA was responsible for the day-to-day oversight, supervision, care, custody, control, direction, safety, and well-being of people confined at FCI Dublin, including Plaintiff.  Defendant Garcia is sued in his individual capacity.

19.     While acting and failing to act as alleged herein, Defendants had complete custody

---

[2] In August 2022, former Dublin Officer Nicholas T. Ramos died by suicide while on administrative leave and under investigation for sexually abusing incarcerated women.

COMPLAINT

and total control of Plaintiff, who was dependent upon Defendants for personal security and necessities.

20.     In performing the acts and/or omissions contained herein, Defendants acted under color of federal law, and each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff.  Each of them knew or should have known that their conduct, attitudes, actions, and omissions were a threat to Plaintiff and to their constitutionally and statutorily protected rights.  Despite this knowledge, Defendants failed to take steps to protect Plaintiff and to ensure that their rights were adequately protected while in the custody of Defendants.

21.     At all times relevant hereto, each Defendant was the agent, representative, or employee of each other Defendant.  At all times relevant hereto, each Defendant was acting within the course and scope of said alternative agency, representation, or employment and was within the scope of their authority, whether actual or apparent.  At all times relevant hereto, each Defendant was the authorized agent, partner, servant, or contractor of each other Defendant, and the acts and omissions herein alleged were done by them acting through such capacity, within the scope of their authority, with the permission, ratification, approval, and consent of each other Defendant. Accordingly, each of them is jointly and severally liable to Plaintiff.

22.     Individual Defendants further directly assaulted, harassed, demeaned, degraded, and trafficked particular Plaintiffs as alleged herein.

**CONDITIONS PRECEDENT TO FEDERAL TORT CLAIMS ACT CLAIMS**

23.     Plaintiff brings claims under the Federal Tort Claims Act, asserted against the United States of America.

24.     Plaintiff exhausted these claims against the United States in accordance with the requirements of the FTCA.

25.     Plaintiff submitted a "Claim for Damage, Injury, or Death" to the BOP as a PREA victim involving staff at FCI Dublin in the sum of $10,000,000.00.  The BOP received her administrative claim on July 11, 2023.  By January 11, 2024, six months after BOP received Plaintiff's administrative claim, the BOP has neither accepted nor rejected the claims.  Pursuant to

COMPLAINT

28 U.S.C. § 2675(a), Plaintiff considers this failure to act as a final denial of the claims.

## JURY DEMAND

26.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues and claims in this action that are so triable.

## FACTUAL ALLEGATIONS

**I.     Federal Law Requires BOP to Take Action to Prevent and Appropriately Respond to Reports of Staff Sexual Misconduct**

27.     Prison staff sexual abuse of incarcerated people constitutes a form of torture that violates the Eighth Amendment.  *See Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).  Such abusive sexual contact also violates federal criminal law.  *See, e.g.*, 18 U.S.C. §§ 2243, 2244.

28.     The Prison Rape Elimination Act ("PREA") of 2003 required the Attorney General to promulgate rules to prevent sexual abuse in prison facilities.  *See* 34 U.S.C. § 30307.  In 2012, the U.S. Department of Justice issued regulations designed to "prevent, detect, and respond to prison rape."  *See* 28 C.F.R. § 115, 77 Fed. Reg. No. 119 (June 20, 2012).  These regulations were immediately binding on BOP facilities.  *Id.*

29.     Under PREA regulations, BOP is required to "train all employees who may have contact with inmates" on the following: its "zero-tolerance policy for sexual abuse and sexual harassment"; prevention, reporting, detection, and response to such behavior; "the right of inmates to . . . be free from retaliation for reporting sexual abuse and sexual harassment"; signs and dynamics of sexual abuse in confinement, and "common reactions of … victims"; and "how to avoid inappropriate relationships with inmates."  *Id.* § 115.31(a).  The training must be "tailored to the gender of the inmates at the employee's facility," and the agency must conduct a refresher training on PREA standards every two years.  *Id.* § 115.31(b)–(c).  In off years from the training, "the agency shall provide refresher information on current sexual abuse and sexual harassment policies."  *Id.* § 115.31(c).

30.     PREA regulations mandate staff reporting.  BOP must "require all staff to report immediately . . . any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency; retaliation

COMPLAINT

against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation." 28 C.F.R. § 115.61(a).

31. Per PREA regulations, administrative investigations of alleged sexual abuse by a staff member or incarcerated person are required to proceed "promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports." *Id.* § 115.71(a). Investigators must be specially trained in sexual abuse investigations and must "gather and preserve direct and circumstantial evidence," including interviewing "alleged victims, suspected perpetrators, and witnesses" and "shall review prior complaints and reports of sexual abuse involving the suspected perpetrator." *Id.* § 115.71(c)-(b). The agency is prohibited from determining an alleged victim's credibility based on their "status as inmate or staff." *Id.* § 115.71(e). Investigations are further required to "include an effort to determine whether staff actions or failures to act contributed to the abuse." *Id.* § 115.71(f). "The departure of the alleged abuser or victim from the employment or control of the facility or agency shall not provide a basis for terminating an investigation." *Id.* § 115.71(j).

32. Substantiated allegations of potentially criminal conduct must be referred for prosecution and the agency must retain written reports of investigations for five years beyond the end of the staff member's employment. *Id.* § 115.71(h)–(i). After investigating an incarcerated person's allegation that they were abused, BOP must inform that person of whether their allegation was found to be substantiated, unsubstantiated, or unfounded, even if the investigation was completed by another agency. *Id.* § 115.73(a)–(b). The presumptive disciplinary sanction for substantiated allegations of sexual abuse is termination. *Id.* § 115.76(b).

33. PREA also includes measures designed to prevent staff retaliation following incarcerated persons' reports of abuse. PREA requires that BOP establish a policy to prevent retaliation, and that staff monitor retaliation, provide "emotional support services for inmates . . . who fear retaliation," and monitor for at least 90 days the conduct and treatment of incarcerated people who report abuse. *Id.* § 115.67. These protective measures include strict limits on the use of administrative segregation. The regulations provide: "Inmates at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all

COMPLAINT

available alternatives has been made, and . . . there is no available alternative means of separation from likely abusers.  If a facility cannot conduct such an assessment immediately, the facility may" hold the individual in segregated housing for "less than 24 hours while conducting the assessment."  *Id.* § 115.43(a).   Any incarcerated person placed in protective custody for this purpose "shall have access to programs, privileges, education, and work opportunities to the extent possible."  *Id.* § 115.43(b).

34.     Defendants repeatedly violated these regulations.  From inadequate training, to lack of confidential reporting mechanisms and access to outside support services, to failures in administrative investigations, widespread misuse of administrative segregation, and rampant staff retaliation, its actions and failures to act created an environment that exposed Plaintiff to an unconscionable risk of sexual violence.  As one survivor of staff sexual abuse at Dublin remarked at the trial of Defendant GARCIA, PREA "really doesn't exist in Dublin."  Transcript at 401, *United States v. Garcia*, No. CR-21-00429-YGR (N.D. Cal. Nov. 29, 2022).

## II.     FCI Dublin Leadership and Staff Allowed Sexual Assault to Flourish.

35.     Eight former officers—including former Warden Ray Garcia and a former chaplain—have been charged with sexual misconduct for incidents spanning from 2019 into 2021, with more charges likely forthcoming.  *See United States v. Garcia*, No. 4:21-cr-00429-YGR (N.D. Cal.) (sentenced to 70 months in prison and 15 years of supervised released following jury trial); *United States v. Highhouse*, No. 4:22-cr-00016-HGS (N.D. Cal.) (sentenced to 84 months in federal prison and 5 months of supervised release following guilty plea); *United States v. Chavez*, No. 4:22-cr-00104-YGR-1 (N.D. Cal.) (sentenced to 20 months in federal prison and 10 years of supervised release following guilty plea); *United States v. Klinger*, No. 4:22-cr-00031-YGR (N.D. Cal.) (plead guilty to three counts of sexual abuse of a ward); *United States v. Bellhouse*, No. 4:22-cr-00066-YGR (N.D. Cal.) (sentenced to 63 months in federal prison and 5 years of supervised release following jury trial); *United States v. Smith*, No. 4:23-cr-00110-YGR-1 (charges pending); *United States v. Nunley*, No. 4:23-cr-00213-HSG (N.D. Cal.) (awaiting sentencing following guilty plea for 4 counts of sexual abuse of a ward, 5 counts of abusive sexual contact, and 1 count of false statements to a government agency); *United States v. Jones*, No. 4:23-cr-00212-HSG

COMPLAINT

(N.D. Cal.) (sentenced to 96 months in federal prison and 10 years of supervised release following guilty plea for 6 counts of sexual abuse of a ward and 1 count of false statements to a government agency).

36.     Defendant RAY J. GARCIA ("Defendant GARCIA") was the associate warden at FCI Dublin between December 2018 and November 2020, and the warden of FCI Dublin from November 2020 to July 2021 – a time that overlapped with Plaintiff being abused by Defendants SMITH, DINES, and BLANCA.  As the warden, Defendant GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin.  Defendant GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

37.     Defendant GARCIA was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact, and one count of lying to the FBI. Defendant GARCIA was sentenced to 5 years and 10 months in prison.

38.     Defendant GARCIA led training on the Prison Rape and Elimination Act and chaired the audit of FCI Dublin under the PREA.  Thus, the man responsible for reporting incidents to the government and teaching inmates how to report rape was in fact a serial rapist of incarcerated people, and he was clearly tolerating and allowing abuse by many more of his underlings, including Defendants POOL and SAUCEDO, and Officer RAMOS.

39.     Defendant GARCIA had actual knowledge that the other correctional officers under his supervision were sexually assaulting inmates before and after Plaintiff was abused.  Despite this knowledge, Defendant GARCIA did not do anything to stop it, even though he had a duty to do so.  Due to the fact that Defendant GARCIA had knowledge of prior sexual abuse at FCI and failing to do anything about it, it allowed FCI agents, representatives, and employees to abuse Plaintiff.

40.     Defendant GARCIA had actual knowledge that inmates complained about the assaults.  Defendant GARCIA knew or should have known that the inmates were subjected to retaliation.  Because Defendant did not investigate complaints of abuse and harassment and did not do anything to stop it, inmates, including Plaintiff, were abused.  Had Defendant GARCIA

COMPLAINT

1    taken reasonable actions, which he was under a legal duty to perform, Plaintiff would not have

2    been abused.  Defendant Garcia's intentional indifference to inmate abuse was a substantial factor

3    in Plaintiff suffering abuse.

4           41.     PREA guidelines and FCI Dublin policies and procedures required all inmate

5    complaints of sexual assault and sexual abuse filed or reported internally be reported to Defendant

6    GARCIA.  During GARCIA's tenure, complaints of sexual assaults of inmates by correctional

7    officers and/or staff were reported.

8           42.     With knowledge of prior abuse against inmates by FCI Dublin, representatives, and

9    employees, Defendant GARCIA failed to protect the inmates and turned a blind eye.  Such

10   behavior set the tone for rape culture at FCI Dublin, garnering Garcia and his subordinate

11   correctional officers and employees the nickname – "the Rape Club."

12          43.     Further, Defendant GARCIA and others inadequately supervised and trained the

13   prison's correctional officers and other employees, including Defendants Defendants POOL and

14   SAUCEDO, and Officer RAMOS.  The UNITED STATES failed to supervise which was a

15   substantial factor in causing Plaintiff's abuse.

16          44.     Defendants repeatedly violated the law.  From inadequate training, to lack of

17   confidential reporting mechanisms and access to outside support services, to failures in

18   administrative investigations, widespread misuse of administrative segregation, and rampant staff

19   retaliation, its actions—and failures to act—created an environment that exposed Plaintiff to an

20   unconscionable risk of sexual violence.  As one survivor of staff sexual abuse at Dublin remarked

21   at the trial of Defendant GARCIA, PREA "really doesn't exist in Dublin."  Transcript at 401,

22   *United States v. Garcia*, No. CR-21-00429-YGR (N.D. Cal. Nov. 29, 2022).

23   **III.    Defendants POOL And SAUCEDO, And Officer RAMOS Terrorized Plaintiff And
            Forced Her To Have Sex With Defendant POOL**

24

25          45.     Plaintiff was incarcerated at FCI Dublin beginning on or around August 2014.

26   Defendant POOL subjected Plaintiff to extensive sexual harassment and abuse while Plaintiff was

     incarcerated.  Defendant POOL used his power and authority as a correctional officer to coerce

27   Plaintiff into having sex with him.  Officer RAMOS, and Defendants POOL and SAUCEDO all

28

entered into the facility around the same time in Fall 2017. Plaintiff worked in Safety, and these officers had various supervision duties over her, such as signing off about where Plaintiff was and whether he had completed her work tasks.

46. Defendant POOL began making advances toward Plaintiff in December 2017. Defendant POOL started making sexual innuendos and became pushy with her, directly asking her to have sex with him. Defendants POOL, SAUCEDO, and RAMOS were good friends and helped each other sexually harass and assault other women. When Plaintiff rejected Defendant POOL's sexual advances, Defendant SAUCEDO and Officer RAMOS terrorized her, searched her room, and destroyed or thew away her belongings if she denied sex to Defendant POOL. The cycle repeated for months, and the officers worked together to pressure her by psychologically breaking her down to have sex with Defendant POOL.

47. In October 2018, after persistent sexual advances and pressure, Plaintiff was raped by Defendant POOL. More specifically, Officer RAMOS came to Plaintiff's cell between approximately 1 and 3 am and escorted her to the compound office, stating that she had to provide a urinalysis sample for testing (colloquially known as a "UA"). Defendants POOL and SAUCEDO were waiting in the compound office in a small room when she arrived. Plaintiff immediately began to feel nervous because she knew that according to BOP policy, UAs are required to be conducted by women, and that incarcerated women should not be alone in rooms with men. Defendant POOL then asked Plaintiff if she knew why she was there and said "you are not here for a UA, you are here for me." Plaintiff then tried to leave, but Defendant SAUCEDO and Officer RAMOS pinned Plaintiff to the wall and then pushed here to ground before forcefully pulling her pants down. Defendant POOL then pulled down his pants and had vaginal intercourse with Plaintiff for approximately 10 minutes. Defendant SAUCEDO and Officer RAMOS then let go of Plaintiff, and Officer RAMOS escorted her back to her cell, stating that if she told anyone what had happened she would "be sorry" and that they would make Plaintiff's life "harder than it already was," threatening to put her in the Special Housing Unit ("SHU") and charge her with seducing an officer.

48. Defendant POOL raped Plaintiff in the same way eight days later. Plaintiff

COMPLAINT

attempted to avoid these officers, but around 10 or 11 am Defendant SAUCEDO called her into a room to get a fire extinguisher checked. When she went in, she was once again pinned down by Officer RAMOS and Defendant SAUCEDO while Defendant POOLE forcibly removed her pants and forced himself into her. Poole stated she should "start getting used to doing what he wanted or else SAUCEDO and RAMOS would make her have a hard time." When this was over, she was taken to her unit where she had her room searched. The officers told her not to speak to anyone.

49.     From October 2018 to February 2019, Defendant POOL sexually abused Plaintiff between one to three times a week, amounting to at least 30-60 (thirty to sixty) sexual interactions in four months.  The abuse primarily consisted of vaginal sex.  Plaintiff sometimes attempted to avoid being assaulted by stating she was on her period.  When Defendant POOL "wanted to seem important," he would force Plaintiff to have oral sex.  In most of these instances of abuse, Defendant SAUCEDO and Officer RAMOS held plaintiff down while she was being raped.

50.     Defendant POOL was often violent during this abuse.  Before having vaginal intercourse, he often held her up by the throat, pulled her hair, and yanked her around by her hair. When he was violent, Plaintiff would protest and say she didn't want to have sex and wanted nothing to do with Defendant POOL.  Defendant POOL laughed at her, and told her "You think I can't find someone else?"  When Plaintiff resisted, Defendant POOL instructed Defendant SAUCEDO and Officer RAMOS to bring Plaintiff back to her room, where they would destroy it in front of her.  After a few hours, Defendant SAUCEDO and Officer RAMOS would return and threaten Plaintiff to either have sex with Defendant POOL or be placed in solitary confinement. Plaintiff felt as though she could not say no, and she had no choice but to relent to what they wanted.

51.     Defendant SAUCEDO and Officer RAMOS also coordinated Defendant POOL's sexual abuse Plaintiff in other ways.  They escorted Plaintiff to areas in FCI Dublin that were not visible to facility cameras, including the visiting room, the compound room, and the food service area.  Officer RAMOS sometimes worked as a lookout while Defendant POOL raped Plaintiff to ensure that Defendant POOL did not get caught by another officer or incarcerated person.  Officer RAMOS and a staff counselor also facilitated a payment system to entice other incarcerated

COMPLAINT

people to help keep this sexual abuse a secret from other prison officials.  Defendant POOL and Officer RAMOS gave incarcerated people food, perfumes, alcohol, spices, and drugs—including K-2—in exchange for their time as a lookout.  They facilitated payment for their lookouts by putting their "payment"—whether that was food, drugs, or special items—in a trash bag.  They then told the lookout to "get the trash" where their payment could be found.  Plaintiff witnessed others act as lookouts in order to get these items.  This complex system covered up Defendant POOL's abuse and allowed it to continue.

52.     During and after this abuse, Plaintiff became withdrawn, and she stopped enjoying some of things and activities she once participated in. She previously was involved in Native events and religious ceremonies at the facility, but after this occurred, all she wanted to do was hide.

**IV.     Defendant SAUCEDO Sexually Harassed And Threatened Plaintiff**

53.     Defendant SAUCEDO not only assisted Defendant POOL's sexual abuse, but also sexually harassed Plaintiff himself.  Defendant SAUCEDO repeatedly asked Plaintiff to have sex with him.  When she rejected his advances, Defendant SAUCEDO would use the same retaliation tactics that he used for Defendant POOL and destroyed her room in an effort to coerce her to comply.  Plaintiff heard that Defendant SAUCEDO often acted the same way towards other incarcerated women in the facility.  Plaintiff also knew Defendants POOL, SAUCEDO, and RAMOS threw incarcerated people's commissary food on the floor and instructed people to pick it up as punishment for rejecting their advances.

54.     One day while Plaintiff was in the visitation room, Defendant SAUCEDO ended her visitation early by forty-five minutes.  Defendant SAUCEDO forced Plaintiff to strip so he could search her upon leaving the visitation room.  During this strip search, Defendant SAUCEDO propositioned her again and told her that he "wanted to see what [she] can do."  When she again rejected his advances, he threatened her by saying he could make her life "hell."

**V.     Plaintiff Was Repeatedly Subjected To Discrimination Because Of Her Identity As A Native American**

55.     Plaintiff is Native American—she is from the Lakota and Apache tribes.  She

COMPLAINT

experienced consistent discrimination by officers because she is Native American.  Defendants

SAUCEDO and RAMOS made comments to her while they were bullying her and other Native

Americans.  They often said, "Native Americans are worth nothing but drinking alcohol and going

to prison."  They also said, "All Native people do is just commit crimes on each other."

Defendant SAUCEDO specifically told Plaintiff, "You are a recovering alcoholic Native

American and when you are released, you'll just go back to drinking like all Native Americans

do."  Officer RAMOS often jumped in to make similar racist and anti-indigenous comments.

Plaintiff knew they wanted to make Native people hate themselves based on their Native

membership or identity.

56.     Officers at FCI Dublin regularly discriminated against Native people's religious

rights.  Officers intentionally prevented Native people from participating in prayer circles or sweat

lodges as a form of harassment.  This happened to Plaintiff in 2017 and 2018 during Native Holy

Days which happened every year in September.  Officers forbade her and other Native people

from passing through the facility during the only times when the prayer circles and sweat lodges

occurred to intentionally prevent them from attending religious ceremonies.

57.     She also saw officers throw Native people's religious items in the trash.  Defendant

SAUCEDO threw away religious and cultural items including a Native American head medallion.

**VI.    Defendants POOL And SAUCEDO, And Officer RAMOS Threatened Retaliation
And Coerced Plaintiff Not To Report Her Abuse**

58.     Throughout Plaintiff's incarceration and experiences of sexual abuse, Defendants

POOL and SAUCEDO, and Officer RAMOS repeatedly subjected Plaintiff to various forms of

coercion and threats to force her to engage in sexual acts, and to prevent her from reporting.  If

Plaintiff rejected either Defendant POOL or Defendant SAUCEDO's sexual advances, her room

was searched in retaliation, and her things were stolen, confiscated, or destroyed without cause.

Plaintiff faced constant threats to keep quiet which made her terrified to tell anyone at all about

her abuse.  Defendant POOL told her, "If you tell anyone, they won't believe you.  They'll believe

me because I'm an officer."  Defendant POOL also told Plaintiff, "I will tell people you forced

yourself on me if you report."

COMPLAINT

59.     When Plaintiff learned she was being relocated to FCI Phoenix, Defendant SAUCEDO and Officer RAMOS threatened her to prevent her from reporting the abuse she had experienced in FCI Dublin to any officials at her new facility.  They told Plaintiff, "We have friends in Phoenix who we can talk to if you say anything.  We can get you behind the fence again and your life would be a mess."  Plaintiff was terrified to be subject to the same violent sexual assault, harassment, and retaliation that she had experienced for years.  She thought there was no way to speak to anyone about her abuse or to seek help.  She was so scared about what they could do to her if she reported.

60.     As a result of this repeated violent sexual abuse, sexual harassment, and retaliation, Plaintiff lived in a constant state of fear.  She felt as if the Defendants broke her down; she had to separate herself from her body when she was being abused because there was no way to tell the Defendants no.  She now feels like she has difficulty trusting people.  As a result of the violent rapes, she suffered physical injuries including bruising on her shoulders.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
***Plaintiff Against Defendants POOL and SAUCEDO***
**(Eighth Amendment, Cruel and Unusual Punishment)**

61.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

62.     Defendants POOL and SAUCEDO subjected Plaintiff to serious bodily harm as defined by the Eight Amendment when they sexually assaulted and harassed Plaintiff and provided or withheld privileges to coerce sexual favors from Plaintiff.

63.     Defendants' actions and failures described here caused the Plaintiff's physical, emotional, and constitutional harms, and she has a claim for damages for such violations under ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment.

64.     This claim for damages is cognizable under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) because it claims the same harm and injury as recognized in *Carlson v. Green* 446 U.S. 14 (1980) and *Farmer v. Brennan* 511 U.S. 825 (1994), two recognized *Bivens*

COMPLAINT

contexts.

## SECOND CLAIM FOR RELIEF
### *Plaintiff Against Defendants GARCIA, POOL, and SAUCEDO*
**(Eighth Amendment, Cruel and Unusual Punishment)**

65.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

66.     Defendants GARCIA, POOL, and SAUCEDO were deliberately indifferent to the substantial likelihood of serious harm to Plaintiff.  Despite knowledge, Defendants did nothing to prevent the alleged sexual misconduct.

67.     Defendant's actions and failures described here caused the Plaintiff's physical, emotional, and constitutional harms, and she has a claim for damages for such violations under ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment.

68.     This claim for damages is cognizable under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) because it claims the same harm and injury as recognized in *Carlson v. Green* 446 U.S. 14 (1980) and *Farmer v. Brennan* 511 U.S. 825 (1994), two recognized *Bivens* contexts.

## CLAIMS FOR RELIEF UNDER THE FTCA

### THIRD CLAIM FOR RELIEF
### *Plaintiff Against the United States*
**(Sexual Assault; Sexual Battery – Cal. Civ. Code § 1708.5)**

69.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

70.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants, while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

71.     A person commits a sexual battery when he acts with the intent to cause a harmful

16

or offensive contact with another by use of the person's intimate part, and a sexually offensive contact with that person directly or indirectly results.  Cal. Civ. Code § 1708.5(a)(2).

72.    Defendants subjected Plaintiff  to sexual acts, with the intent to cause harmful or offensive contact.  Such contact with Plaintiff was deeply offensive to their personal dignity and would offend a person of ordinary sensitivity.

73.    As a direct and proximate result of the foregoing, Plaintiff suffered psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

74.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

### FOURTH CLAIM FOR RELIEF
#### *Plaintiff Against the United States*
**(Intentional Infliction of Emotional Distress ("IIED") – California common law)**

75.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

76.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin. Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

77.    A person is liable for IIED when the defendant engages in outrageous conduct, when the defendant intended to cause plaintiff to suffer emotional distress or engaged in the conduct with reckless disregard to the probability of causing plaintiff to suffer emotional distress, the plaintiff suffered emotional distress, and the outrageous conduct was a cause of the severe emotional distress.

78.    Defendant United States, individually or through its agents, servants, contractors, and/or employees, engaged in extreme and outrageous conduct by subjecting Plaintiff to sexual acts while incarcerated in their custody, through the above-described acts and omissions.

79.    Plaintiff's injuries and damages were caused by intentional torts perpetrated by

COMPLAINT

Defendants.  Under 28 U.S.C. § 2680(h), Defendant United States is liable for intentional torts perpetrated by its agents, including correctional officers, that occurred within the scope of their employment under color of federal law.

80.     At all relevant times, Defendants were acting under color of law by supervising, disciplining, overseeing, monitoring, controlling, directing, restraining, and imprisoning Plaintiff within the scope of their employment for the United States.

81.     Defendants used their authority as law enforcement officers to sexually assault and harass Plaintiff, and as a direct and proximate cause of this conduct Plaintiff has suffered psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

82.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

### FIFTH CLAIM FOR RELIEF
*Plaintiff Against the United States*
### (Sexual Harassment - Cal. Civ. Code § 51.9)

83.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

84.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

85.     A person is liable for sexual harassment when a special relationship exists between a plaintiff and person where there is a considerable imbalance of power; the defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or hostile nature based on gender, that were unwelcome and pervasive or severe; and the plaintiff has suffered or will suffer economic loss or personal injury including emotional distress or violation of a statutory or constitutional right.

COMPLAINT

86.     There exists in FCI Dublin, as all prisons, an extreme imbalance of power between the officers and the incarcerated individuals.  Officers control every aspect of incarcerated persons lives.  In addition to this always-present imbalance of power, the problem is compounded by retaliation against those who report misconduct.

87.     For purposes of Cal. Civ. Code § 51.9, a special relationship exists/existed between Defendants and Plaintiff due to the coercive power of the officers' positions.

88.     Defendants in this special relationship with Plaintiff violated Cal. Civ. Code § 51.9 by repeatedly sexually abusing her.

89.     Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

90.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**SIXTH CLAIM FOR RELIEF**
***Plaintiff Against the United States***
**(Tom Bane Civil Rights Act– Cal. Civ. Code § 52.1)**

91.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

92.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

93.     A person interferes with another's civil rights if the person uses or attempts to use threats, intimidation, or coercion to interfere with the exercise or enjoyment of rights secured by the Constitution or state or federal laws.

94.     Speech alone is sufficient where the threatened person reasonably fears violence because the person threatening had the apparent ability to carry out the threat.  Because of the coercive, and sometimes violent, nature of a prison and the fact that survivors had seen retaliation

COMPLAINT

before, Plaintiff reasonably feared violence by Defendants.

95.     Defendant United States through its agents, servants, contractors, and/or employees violate Plaintiff's rights, including but not limited to, their right of protection from bodily harm and sexual violation, imposition of punishment without due process, and cruel and unusual punishment.  Defendants violated these rights by threats, intimidation, or coercion.

96.     As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

97.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

## SEVENTH CLAIM FOR RELIEF
### *Plaintiff Against the United States*
**(Gender Violence – Cal. Civ. Code § 52.4)**

98.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

99.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

100.     Gender violence is a form of sex discrimination and includes a physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

101.     The conditions at FCI Dublin are that of coercive conditions, as evident by officers regularly withholding things like out of cell time or personal property in exchange for sexual favors.  Further, officers exchanged sexual favors for perks that are not normally available to inmates such as treats, alcohol, and the ability to roam the halls.

102.     Defendants discriminated against Plaintiff based on her sex and/or gender when they repeatedly sexually abused her, physically intruding and invading upon her bodies under

20

COMPLAINT

coercive conditions.

103.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

104.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**EIGHTH CLAIM FOR RELIEF**
***Plaintiff Against the United States***
**(Invasion of Privacy – California common law)**

105.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

106.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

107.    The elements of invasion of privacy are (1) whether the defendant intentionally intruded, physically or otherwise, upon the solitude or seclusion, private affairs or concerns of the plaintiff; (2) the intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person; and (3) the intrusion caused plaintiff to sustain injury, damage, loss, or harm.

108.    Defendants intentionally and substantially intruded, both physically and otherwise, upon Plaintiff's seclusion when they repeatedly sexually abused her.

109.    Such intrusions were substantial and highly offensive to an ordinarily reasonable person due to their sexual and degrading nature.

110.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

111.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

COMPLAINT

States for the wrongful acts/omissions of its employees.

## NINTH CLAIM FOR RELIEF
### *Plaintiff Against the United States*
### (Negligence – California common law)

112.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

113.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

114.    At all relevant times, Defendant United States hired various correctional and/or administrative personnel at FCI Dublin, including but not limited to wardens, associate wardens, captains, lieutenants, unit managers, counselors, correctional officers, and investigators.

115.    At all relevant times, FCI Dublin personnel, including individual Defendants, held themselves out to Plaintiff as correctional and/or administrative personnel with the knowledge, capacity, and ability to provide due care in accordance with standards of reasonable care common and acceptable in the community.

116.    **Duty.** United States and all other Defendants had a custodial duty, as well as a mandatory statutory obligation under PREA and BOP policy, to protect Plaintiff, who was incarcerated by the United States, from foreseeable harm, including sexual abuse.  This duty was non-delegable.

117.    BOP policy forbids staff in engaging with sexual activity with inmates and staff may not allow other people to engage in sexual activity.  BOP policy makes clear that all sexual activity with inmates, even non-physical, is against policy.  BOP states that there is no such thing as consensual sex between staff and inmates.

118.    United States and all other Defendants also had a general duty of care to Plaintiff to act as a reasonable prudent person would under similar circumstances.

119.    It was the Defendants' duty to maintain, operate, and control FCI Dublin as a safe

COMPLAINT

and secure space for incarcerated people.

120.    It was the Defendants' duty to protect incarcerated people from foreseeable harm inflicted by BOP personnel.

121.    **Breach of Duty.** The United States, individually or through its agents, servants, contractors, and/or employees acting within the scope of their employment, breached those duties by failing to supervise and operate FCI Dublin in a manner that would have prevented ongoing sexual abuse and retaliation against Plaintiff.

122.    A reasonable administrator would have complied with PREA regulations, including safeguarding against retaliation for those who report misconduct.

123.    A reasonable administrator would also not have exposed Plaintiff to the danger of ongoing sexual abuse.

124.    Agents, servants, contractors, and/or employees of Defendant United States knew or should have known about the ongoing sexual abuse against Plaintiff, and in breaching their duty directly exposed Plaintiff to an unreasonable risk of bodily injury and sexual assault.

125.    Despite notice, Defendant United States, through its employees, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff in violation of federal regulations and BOP policy.

126.    The United States, through its employees also failed to train, retain, and supervise officers as well as monitor and investigate them.

127.    When the employer is aware of its employees' tortious conduct, as it was here, and it ignores or assists in it, retention of employees does not represent legitimate policy considerations warranting discretion.

128.    At all relevant times, each of the Defendants stood in such a relationship with the other Defendants as to make each of the Defendants liable for the acts and omissions of all other Defendants in regard to their treatment of Plaintiff.

129.    **Causation.** The United States' negligence in administering FCI Dublin is a direct and proximate cause of Plaintiff's injuries, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

COMPLAINT

130.    Officers' employment at FCI Dublin was essential to their commission of tortious misconduct, which would not have happened absent their employment and privileges.

131.    Defendant officers' conduct was grossly negligent as they showed complete disregard for rights and safety of Plaintiff.

132.    It was foreseeable to FCI Dublin personnel that Plaintiff was at risk of imminent serious harm including sexual abuse.

133.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**TENTH CLAIM FOR RELIEF**
***Plaintiff Against the United States***
**(Negligent Infliction of Emotional Distress ("NIED") – California common law)**

134.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

135.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

136.    The elements of an NIED claim are as follows: (1) the defendant engaged in negligent conduct/a willful violation of a statutory standard; (2) the plaintiff suffered serious emotional distress; and (3) the defendant's negligent conduct/willful violation of statutory standard was a cause of the serious emotional distress.

137.    Defendant officers and the United States engaged in negligent conduct and willful violations of statutory standards by repeatedly sexually abusing Plaintiff, constituting both extreme and outrageous behavior and the negligence.

138.    The United States' negligence in administering FCI Dublin is a direct and proximate cause of Plaintiff's injuries, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

139.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

24

COMPLAINT

1  States for the wrongful acts/omissions of its employees.

2  **CLAIMS FOR RELIEF UNDER THE TVPA**

3       140.    Plaintiff incorporates by this reference the allegations contained in the preceding
4  paragraphs as if set forth fully herein.

5       141.    The exploitation of vulnerable people is so common that Congress has passed the
6  Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1581 *et seq*., a comprehensive
7  statutory framework imposing both criminal and civil liability, *see* 18 U.S.C. § 1595, of persons
8  engaging or attempting to engage or benefit from sexual exploitation and labor trafficking or
9  obstructing anti-trafficking enforcement.

10       142.    Specifically, the TVPA punishes anyone who attempts to, conspires to, or actively
11  "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or
12  solicits by any means a person; or  . . . benefits, financially or by receiving anything of value, from
13  participation in a [trafficking] venture" while knowing "that means of force, threats of force,
14  fraud, coercion . . . will be used to cause the person to engage in a commercial sex act."  18 U.S.C.
15  § 1591(a); 18 U.S.C. § 1594.

16       143.    "Coercion" means "threats of serious harm to or physical restraint against any
17  person . . . any scheme, plan, or pattern intended to cause a person to believe that failure to
18  perform an act would result in serious harm to or physical restraint against any person" or "the
19  abuse or threatened abuse of law or the legal process."  18 U.S.C. § 1591(e)(2).

20       144.    "Serious harm" means "any harm, whether physical or nonphysical, including
21  psychological, financial, or reputational harm, that is sufficiently serious, under all the
22  surrounding circumstances, to compel a reasonable person of the same background and in the
23  same circumstances to perform or to continue performing commercial sexual activity in order to
24  avoid incurring that harm."  18 U.S.C. § 1591(e)(5).

25       145.    The term "abuse or threatened abuse of law or legal process" means the use or
26  threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or
27  for any purpose for which the law was not designed, in order to exert pressure on another person to
28  cause that person to take some action or refrain from taking some action.  18 U.S.C. § 1591(e)(1).

COMPLAINT

146.   Commercial sex act "means any sex act, on account of which anything of value is given to or received by any person."  18 U.S.C § 1591(e)(3).

147.   Additionally, the TVPA punishes anyone who "knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means.

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

18 U.S.C. § 1589 (a).

148.   The TVPA punishes anyone who knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).  18 U.S.C. § 1589 (b).

149.   The term "abuse or threatened abuse of law or legal process" in the forced labor provision means "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action."  18 U.S.C. § 1589 (c)(1).

150.   The term "serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."  18 U.S.C. § 1589 (c)(12).

151.   The TVPA also punishes anyone who "obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section," 18 U.S.C. § 1591(d).

152.   The TVPA allows "[an] individual who is a victim of a violation of this chapter [to] bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts to conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees."  18 U.S.C. § 1595(a).

153.   Congress grants a plaintiff up to ten years in which to bring a civil action under 18 U.S.C. § 1595(c).

**ELEVENTHFIRST CLAIM FOR RELIEF**
*Plaintiff Against Defendants POOL and SAUCEDO*
**(Sex Trafficking)**

154.   Defendants POOL and SAUCEDO engaged or attempted to engage in sex trafficking of Plaintiff as prohibited under 18 U.S.C. §§ 1591, 1594(a).

155.   Defendant POOL forced Plaintiff to engage in commercial sex acts within the meaning 18 U.S.C. § 1591.  These sex acts included oral and vaginal sex.

156.   Defendants POOL and SAUCEDO knowingly recruited, enticed, and solicited Plaintiff by flirting with, manipulating, harassing, threatening, tormenting, and pressuring Plaintiff for sex acts.

157.   Defendant POOL made Plaintiff commit these sexual acts through force, fraud, or coercion within the meaning of 18 U.S.C. § 1591.  For example by:

- Using physical force to orally and vaginally penetrate Plaintiff;

- Assaulting Plaintiff in places where she could not easily escape;

- Using his power and status as a correctional officer who has the power to control and direct incarcerated persons and their movements to have commercial sex acts with him;

- Having Plaintiff transported to and from locations to facilitate commercial sex acts with him;

27

- Paying incarcerated persons with items of value such, for example food, perfume, alcohol, spices, and drugs in exchange for keeping these sexual abuses a secret and for serving as a lookout while these sexual abuses were taking place.

158.    Defendant SAUCEDO made Plaintiff commit these sexual acts through force, fraud, or coercion within the meaning of 18 U.S.C. § 1591.  For example by:

- Using his power and status as a correctional officer who has the power to control and direct incarcerated persons and their movements to have commercial sex acts with Defendant POOL;

- Using physical force to hold Plaintiff down while Defendant POOL assaulted her;

- Transporting Plaintiff to and from locations to facilitate Defendant POOL's commercial sex acts with Plaintiff;

- Threatening her and conducting cell searches if she did not comply with POOLE's sexual abuse .

159.    These methods of force, fraud, and coercion were a plan designed to make Plaintiff believe that she would suffer serious harm should she not obey Defendant POOL and SAUCEDO's abuses.

160.    These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that were intended to cause a person to believe that failure to perform an act would result in serious harm or physical restraint.

161.    These acts constitute civil wrongs inflicted on Plaintiff and actionable under 18 U.S.C. § 1595.

162.    Defendants' conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm and she has a claim for damages for such violations under 18 U.S.C. §§ 1591, 1594(a), and 1595.

163.    Defendant's conduct warrants the Court's imposition of compensatory and punitive damages against the Defendants.

164.    Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendants' wrongful conduct.

COMPLAINT

**TWELFTH CLAIM FOR RELIEF**
**Plaintiff Against Defendants POOL and SAUCEDO**
**(Obstruction)**

165.     Defendants POOL and SAUCEDO together and individually obstructed or attempted to obstruct enforcement efforts or investigations into the sex trafficking of Plaintiff under 18 U.S.C. § 1591(d).  They did so in the following ways:

- Defendants POOL and SAUCEDO threatened Plaintiff's safety and property to silence her and prevent reporting of her sexual abuse; and

- Defendant SAUCEDO threatened Plaintiff with further incarceration to silencer her and prevent her from reporting her sexual abuse after being transferred to a new facility.

166.     These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that were intended to cause a person to believe that reporting would result in serious harm or physical restraint.

167.     These acts constitute civil wrongs inflicted on Plaintiff and are actionable under 18 U.S.C. § 1595.

168.     Defendants' conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

169.     Defendants' conduct warrants the Court's imposition of compensatory and punitive damages against the Defendants.

170.     Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendants' wrongful conduct.

**THIRTEENTH CLAIM FOR RELIEF**
*Plaintiffs Against All Individual Capacity Defendants*
**(Conspiracy to Violate the Trafficking Victims and Protection Act, 18 U.S.C. § 1584)**

171.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

172.     The Trafficking Victims Protection Act establishes that "[w]hoever conspires with another to violate section 1581, 1583, 1589, 1590, or 1592 shall be punished in the same manner

as a completed violation of such section; . . . [and w]hoever conspires with another to violate section 1591 shall be fined under this title, imprisoned for any term of years or for life, or both." 18 U.S.C. § 1594 (b), (c).

173.    The TVPA allows "[an] individual who is a victim of a violation of this chapter [to] bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a).

174.    Congress grants a plaintiff up to ten years in which to bring a civil action under 18 U.S.C. § 1595(c).

175.    At all relevant times, Defendants knowingly agreed, contrived, confederated, acted in concert, aided and abetted, and/or conspired to continue their longstanding practice of exchanging sex for valuable goods or special benefits as defined in 18 U.S.C. § 1591, or obtaining forced labor as defined in 18 U.S.C. § 1589 by coercing incarcerated people to perform sexual acts or to act as lookouts as the Defendants engaged in sexual acts.

176.    All Defendants conspired to recruit, entice, harbor, transport, provide, obtain, maintain, patronize, solicit, or benefit from participation in the sex and/or labor trafficking of Plaintiffs as defined by 18 U.S.C. § 1581 *et seq.*

177.    Defendants committed overt acts in furtherance of the agreement or understanding by committing one or more of the following acts:

- Directly working as lookouts themselves while perpetrating officers engaged or attempted to engage in sexual acts;

- Forcing or coercing other incarcerated people to act as lookouts while perpetuating officers engaged or attempted to engage in sexual acts in exchange for valuable goods or benefits;

- Transporting or directing incarcerated people into locations where principal perpetrating officers could engage or attempt in engage in sexual acts;

- Engaging in retaliatory tactics to threaten and silence survivors or witnesses of sexual abuse or trafficking including but not limited to threats of physical

COMPLAINT

abuse and/or restraint, threats of law or process, indiscriminate searches, taunting, and humiliation;

- Knowingly refusing to report abuse or trafficking occurring at FCI Dublin and/or obstructing investigation into abuse or trafficking;

- Maintaining practices, policies, and procedures that allowed Defendants to benefit from unlawful commercial sex ventures and human trafficking.

178. Defendants' participation and assistance in the furtherance of an illegal sex trafficking plan and/or purpose was intentional and/or willful and, therefore, Defendants intentionally and/or willfully caused the facilitation of the sex acts in support of their trafficking venture.

179. Defendants knew or should have known that their acts supported and facilitated a trafficking venture.

180. Defendants' conspiracy kept Plaintiff and other witnesses of the trafficking from taking meaningful action, resulting in significant injuries to Plaintiff.

181. Defendants' conduct caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and Plaintiffs have claims for damages for such violations under 18 U.S.C. § 1584; 18 U.S.C. § 1589, 18 U.S.C. § 1591; 18 U.S.C. § 1595.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

### PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants, and each of them, as follows:

182. An award of compensatory, punitive, and nominal damages to Plaintiff in an amount to be determined at trial;

183. An award to Plaintiff, pursuant to 42 U.S.C. §§ 1988 and 12205 of the costs of this suit and reasonable attorneys' fees and litigation expenses; and

184. For such other and further relief as this Court may deem just and proper.

COMPLAINT

1

Respectfully submitted,

2
DATED:  March 7, 2024

ARNOLD & PORTER KAYE SCHOLER LLP

3

By:   */s/ Carson D. Anderson*

4
Stephen Cha-Kim
Carson D. Anderson
5
Natalie Steiert

6

7
DATED:  March 7, 2024

RIGHTS BEHIND BARS

8

By:   */s/ Oren Nimni*

9
Ms. Amaris Montes (she/her)
Mr. Oren Nimni (he/him)
10

11

Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT